DETERMINED IN THE

# THIRD DEPARTMENT

AT.

# GENERAL TERM

## July, 1888.

THE PEOPLE OF THE STATE OF NEW YORK ex rel.
THE TOWN OF BLENHEIM AND Others, Respondents,
*v.* THE BOARD OF SUPERVISORS OF THE COUNTY
OF SCHOHARIE, Appellant.

*Support of indigent insane chargeable to the town — right of boards of supervisors to raise by tax such expenses incurred for several years past.*

The expense of supporting indigent insane is to be paid by the town in which such persons have legal settlements and not by the county, and such expense is properly added by the board of supervisors to the other amounts which are to be levied on such town.

In an action, brought to restrain the board of supervisors of Schoharie county from imposing on the relator, a town in said county, a charge for expenses paid for the several years since January 1, 1882, for such of the indigent insane as had settlements in the relator's town, it was, claimed by the relator that the action or non-action in this respect of former boards of supervisors was conclusive; that any action now, by the present board of supervisors, would be a review of what had been decided by former boards, and that this could not be allowed,

*Held,* that the expenses of indigent patients in the asylum are to be paid, in the first instance, by the county, and the supervisors are then annually to raise the amount of such bills paid by the county treasurer, and such further sum as will probably cover all similar bills for one year in advance.

That the fact that the board of supervisors had not availed itself of the right at the end of each year, since January 1, 1882, to charge to the several towns the amounts which were properly chargeable to them for the support of the indigent insane, did not bar future proceedings for such reimbursement.

PEOPLE ex rel. TOWN OF BLENHEIM v. SUPRS. 309

THIRD DEPARTMENT, JULY TERM, 1888.

That it could not be claimed that the provisions of the statute, directing the raising of the money at the beginning of the year, contemplated that an apportionment should then be made of such expenses *pro rata*, according to the valuation of the towns, as by law the supervisors must raise this money at the beginning of the year, although they have at that time no power to apportion, and no knowledge of the facts on which the apportionment is to be made, which can only be known at the end of the year, when it is known for what patients the money has been paid and how much has been paid for each.

APPEAL by the defendant from an order made at the Rensselaer Special Term awarding an absolute writ of prohibition restraining further proceedings to collect from certain towns in Schoharie county the expenses of the indigent insane, prior to the year ending October 1, 1887.

Since the year 1882, the indigent insane, not paupers, sent from the various towns of Schoharie county, had been supported at the expense of the county, and such expenses had been levied, from year to year, upon taxable property without regard to the places of residence in that county of such indigent insane persons. On the 26th of November, 1887, the board of supervisors of Schoharie county passed a resolution under which they were proceeding to take an account of such payments and to readjust them and charge the several towns in which such indigent insane persons resided with the expenses paid by the county on their account during the six previous years, when this proceeding was commenced.

*Hobart Krum*, for the appellant.

*Amasa J. Parker*, for the respondents.

LEARNED, P. J.:

This is an appeal from an order granting a writ of prohibition. The relators applied to the court for a writ prohibiting the supervisors from passing any resolutions charging the relators with any portion of the expense of the indigent insane theretofore paid by the county. On the hearing in December, 1887, the court granted a writ prohibiting the supervisors from so doing in respect to any such expense paid prior to the year ending October 1, 1887, without prejudice to their right to impose on the towns liable therefor such expense for the year ending October 1, 1887. The supervisors appeal from that part of the order which grants a writ of prohibition in respect to the prior years.

There has been no appeal by the relators; and, therefore, that part of the order which permits the supervisors to impose this expense on the respective towns for the year ending October 1, 1887, stands in full force. And it seems, therefore, that the justice and propriety of such action by the supervisors in respect to the year ending October 1, 1887, is acquiesced in. The point on which we are asked to review is, whether the learned justice ought not to have permitted the supervisors to do the same thing in respect to prior years since 1882. The resolution which the supervisors had adopted made an apportionment and charge of such expenses from January 1, 1882, to October 1, 1887.

The law in regard to the indigent insane has been laid down in a decision in the fourth department (*People ex rel. Russell* v. *Supervisors*, 46 Hun, 354), and we need not discuss it. It is held in that case that the expense of supporting insane is to be paid by the town where such persons had legal settlements, and not by the county; also, that the supervisors could add such expense to the amounts which were to be levied on the town. The latter point disposes of one position taken by defendants, viz., that the supervisors have no right to decide whether certain towns owe the county. Indeed, that right is practically conceded by the permission given in the order that the supervisors may impose on the towns the expense of this nature for the year ending October 1, 1887.

It is urged by the supervisors that they have the same right to impose on the town a charge for similar expenses paid in past years, since January 1, 1882. It is urged by the relators that the action or non-action, in this respect, of former boards of supervisors is conclusive; that the proposed action would be a review of what had been decided by former boards, and that this cannot be allowed. Such is, in brief, the position of the learned justice who granted the order. On the contrary, the supervisors say, in reply, that the matter has never been decided by other boards, and that the failure to properly apportion and impose the expense is not an action of those boards, but is a mere neglect to do what they might have, and ought to have, done.

The expenses of an indigent patient in the asylum are to be paid, in the first instance, by the county. The supervisors are annually to raise the amount of such bills paid by the county treasurer,

*and such further sum as will probably cover all similar bills for one year in advance.* But the county has the right to require reimbursement from any town that is legally liable. (Laws 1874, chap. 446, tit. 3, § 31.) It is evident, then, that money is to be first raised by the supervisors by general tax, enough probably to cover the bills of the year. The exact amount that will be paid cannot then be known. The amount actually paid will be known at the end of the year. Then, too, and not till then, will it be known how much of the aggregate should, under the law, be reimbursed by each town, or by individuals, or cities or other counties. Then, of course, for the first time, the opportunity comes for imposing on the several towns their respective liability

Now, the supervisors of this county, during the years since January 1, 1882, have not availed themselves of the right which they had, at the end of each business year, of requiring the several towns to reimburse the amounts for which they were respectively liable, and which the county had, by the statute, been required to pay for them in advance. We have, then, the case of a county having paid, as it was required by law to do, certain bills and having raised, as it was required by law to do, the money necessary for this purpose. Then we have the right of the county, after this has been done, to require the several towns which were legally liable for certain parts of these bills, to reimburse the moneys thus paid for them respectively. That makes a case, to use the familiar phrase as between natural persons, of money paid, laid out and expended to the use of another. Now, if the county does not, at the end of the business year, require the town, which is liable for the support, to reimburse the county, can it be said that such neglect is an adjudication which at once bars any future proceeding for reimbursement? The same section which gives the county a right to require the town to reimburse also gives a similar right to require any individual or city or other county to reimburse, if legally liable for the support of the patient. Now, such right could only be enforced by action against an individual, a city, or another county. But the action would not be barred by a failure to commence it at once. It would be barred only by the statute of limitations.

In the case of towns no action need be brought. As was decided in the case above cited (and as is decided by the Special Term in

312  PEOPLE ex rel. TOWN OF BLENHEIM v. SUPRS.

THIRD DEPARTMENT, JULY TERM, 1888.

this case in respect to one year), the supervisors may obtain this reimbursement by the usual process of charging the amount against the towns respectively liable. But on the question, when is this right barred, how does the liability of a town differ from that of an individual? If the supervisors had in past years made an apportionment of the expense among the towns, and it were now claimed that such apportionment was incorrect, another question would arise.

And it may be urged that the original raising of the money, at the beginning of the year, is an apportionment *pro rata* according to the valuation of the towns. But the answer to that position is that by law the supervisors *must* raise this money at the beginning of the year. They have, at that time, no power to apportion and no knowledge of the facts on which the apportionment is to be made. It is only at the end of the year when they know for what patients the money has been paid, and how much for each, that they can obtain a reimbursement to the county from the several towns which are respectively liable. It does not seem, therefore, that any action has been taken by the supervisors which they are now attempting to review or reverse.

As is above suggested, if some individual had been liable during these years, since 1882, for the support of an indigent patient, and the county should now bring an action against him to recover the moneys they had paid, could he defend on the ground that the action, or non-action, of former boards had established that the support of such patient was a county charge? We think not. The claim would be good till barred by the statute of limitations. We fail to see any important difference between that case and this.

To illustrate : At the beginning (say) of the year 1882 the supervisors levied and raised such an amount as would pay past bills of this nature, and such further sum as would probably cover similar bills for the year. The amount thus raised may have been sufficient to pay the bills of that year. At the end of the year nothing was done to obtain a reimbursement. Did the county instantly lose its right to be reimbursed? If not, when did it? Did its neglect, at the end of the year, to collect from the respective towns the money owing to the county bar it from doing so a month thereafter? If so, on what ground? If, at the end of that year, the board had

investigated the question and had decided that, as a matter of fact, no town was liable, that decision, if not reversed, might have been conclusive, though erroneous. But they decided nothing. They simply neglected to collect a debt, owing to the county for money paid by it for the benefit of the towns, respectively. We do not see why they may not collect the debt at a subsequent time, if it be not barred by the statute of limitations.

In examining this case we have assumed, without examination, the correctness of the decision above cited, which was applied by the learned justice to one year. We have considered only the question whether that decision, carried out to its necessary consequences, does not justify the action of the supervisors in this case. We are of opinion that it does.

The order must be reversed, so far as it prohibits action, with costs of the appeal, and the motion for prohibition denied, with fifty dollars costs and disbursements.

LANDON, J., concurred; INGALLS, J., not acting.

Order reversed, so far as it prohibits action of supervisors, with costs of appeal; motion for prohibition denied, with fifty dollars costs.